IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GREGORY A. BOLDRIDGE,

Plaintiff,

vs.                                        Case No. 05-4055-SAC

TYSON FOODS, INC.

Defendant.

MEMORANDUM AND ORDER

This failure to hire case, based on diversity and federal

question jurisdiction, comes before the court on defendant's motion for

summary judgment.  In the pretrial order, plaintiff states six theories of

recovery: two under Kansas law and four under the Americans with

Disabilities Act.

**Summary Judgment Standards**

The standards and procedures for summary judgment are well

established and will not be fully repeated here.  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In

essence, summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

**Exhibits/authentication**

Because both parties challenge the authentication and admissibility of certain exhibits, the court finds it necessary to review the basic principles relating to summary judgment exhibits. "For purposes of summary judgment, each document must be authenticated through a supporting affidavit or deposition excerpt from anyone with personal knowledge of the facts contained in the exhibit." *Bunker v. City of Olathe, Kan.*, 97 F. Supp. 2d 1241, 1246 (D. Kan. 2000). *See* Fed. R. Civ. P. 56(c) and (e); D.Kan. Rule 56.1(d). "[T]he court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e)." *Powers v. Tweco Prods., Inc.*, 206 F. Supp. 2d 1097, 1103 (D. Kan. 2002) (citing Fed. R.Civ. P. 56(e). *See, e.g., Getz v. Board of County Comm'rs,* 194 F. Supp. 2d 1154, 1157 n. 1 (D. Kan. 2002); *Patterson v. Dahlsten Truck Line, Inc.*, 130 F. Supp. 2d 1228, 1234 (D. Kan. 2000).

Certain exhibits cannot reasonably be construed to be within the stipulation in the Pretrial Order, Dk. 33, p. 2-3, and are not authenticated by affidavit or adopted in depositions.  Accordingly, the court has disregarded all factual allegations supported by reference to plaintiff's exhibits  4 (transcript from Emporia Human Relations Commission pre-investigation conference)[1]; 5 (April 17, 2006 letter from Dr. Baker to plaintiff's attorney) and 6(Case summary report) of Dk. 46.

The court specifically addresses the job descriptions relied upon by the parties.  Plaintiff alleges that "[t]he real job description for the position that Mr. Boldridge applied for is dated November 3, 2003..."  Dk. 46, p. 17.  That job description contains a list of physical demands which state that "maximal forces are occasionally required to perform this task," but makes no reference to repetitive motion.  Dk. 46, Exh. 1.  Mr. Brownrigg, defendant's Human Resources Manager for the complex at which plaintiff applied for work, confirmed that this job description was a general description of the mechanic job for which plaintiff applied, and

---

[1]An uncertified copy of testimony before an administrative agency is not admissible evidence in a summary judgment proceeding.  *Steven v. Roscoe Turner Aeronautical Corp.*, 324 F.2d 157, 161 (7th Cir. 1963).  This transcript is unsworn, is not made under penalty of perjury, and lacks other authentication.

defendant does not object to it.

Plaintiff objects to the job description submitted by defendant because it is dated November 16, 2004, over a year after plaintiff applied for the position at issue.  Dk. 39, Exh. I.  This job description states, in pertinent part:  "A great majority of these jobs involve light to heavy lifting, with occasional to repetitive and forceful gripping, pinching, pulling and pushing."  Id. p. 1.  The record confirms that this job description was created at some unspecified date after plaintiff applied for the job, at Mr. Brownrigg's request, for purposes of this litigation.  He testified that he asked the maintenance supervisors to put something in writing to show "specifically what the job entailed." Dk. 39, Exh. B, p. 131-32.  The job description thus was not used by the defendant in making the decision not to hire the plaintiff and was not in effect at the relevant time.   Nonetheless, the document reflects defendant's assessment in November of 2004 of tasks required in the position for which plaintiff applied and is admissible for that limited purpose only. [2]

––––––––––––––––––––

[2]Defendant contends that this job description was reviewed by plaintiff during his deposition, but the record reveals it was used merely as a basis of reference for asking plaintiff which job duties he subjectively expected to perform in the maintenance position.  Dk. 39, Exh. A, p. 81-84. That inquiry is separate and distinct from the determination of whether the employer actually required employees in the position to perform certain

The report dated December 8, 2003  by Dr. Chris Fevurly, MD similarly lacks authentication.  This physician apparently conducted a "fitness for duty assessment" of plaintiff's application for employment on December 8, 2003, having reviewed, among other documents, an unidentified "job analyses" for the position.  Defendant's brief seems to imply that Dr. Fevurly relied upon the job description included as part of that same exhibit (Dk. 39  Exh I), but that job description, addressed above and dated in November of 2004, postdates Fevurly's report by 11 months. The court additionally finds it curious that of the twelve documents which Dr. Fevurly's report indicates he reviewed, he specifically references each by its exact date except for the job description.  Dr. Fevurly's report neither authenticates the 2004 job description, nor is itself properly authenticated.

**Uncontroverted Facts**

Plaintiff completed an application for an open maintenance mechanic position at Defendant on August 8, 2003.  Prior to applying for work with defendant, plaintiff had worked for other employers, had sustained injuries, had undergone surgery on both arms,  had received

---

functions at the time plaintiff applied for work, or considered them to be essential.   Plaintiff testified that he was never given any documents during his application process, and did not testify that he had ever seen this job description before his deposition. *Id.*

workers compensation, and had medical restrictions imposed.  When he applied for work with defendant, plaintiff apparently believed that he had fully recovered from his previous injuries, that his medical restrictions had been lifted, and that he was capable of performing what he believed to be the tasks of the maintenance mechanic position for which he applied.

Plaintiff understood that a maintenance mechanic would be required to perform certain tasks including working from floor to ceilings and overheads, working outside on rooftop equipment with occasional work on silos that are 40 feet in the air, working in a climate varying from very cold to very hot, and working in areas that may be wet, dry, steamy and slippery.  Plaintiff also understood that the maintenance mechanic rotated to different areas which may involve overhead work, climbing, crawling, stooping, nailing, bending and being in awkward positions to complete the tasks.  Plaintiff understood that a great majority of the jobs a maintenance mechanic performed involved light and heavy lifting with occasional repetitive gripping, pinching, pulling and pushing, and that the job also entailed the use of wrenches, all kinds of screwdrivers, crowbars, hammers, sledge hammers, hand tools, etc.

The application which plaintiff completed and signed contained

the following statements which plaintiff read:

> Please read before signing this application. I understand that the application and any other company documents are not contracts for employment and that any individual who is hired may voluntarily leave upon proper notice and may be terminated by the company at any time for any reason.  I understand any oral or written statements to be contrary are hereby expressly disavowed and should not be relied upon by any prospective or existing employee or contractor.  I also understand that I will be subject to a probationary period.  I understand that Tyson does not intend to enter into any contract of employment unless expressly stated in writing signed by the highest ranking Human Resources officer. I acknowledge that I have been advised that this application will remain active for not more than 30 days from the date it is made. This certifies that Iagree with the above information and that all entries on this application and all related forms are true and complete to the best of my knowledge.

Dk. 39, Exh. D.

On or about August 13, 2003, plaintiff completed a maintenance exam and interviewed with the personnel department.  After interviewing with the maintenance supervisor, plaintiff received a conditional job offer for the position of maintenance mechanic.  Plaintiff understood the offer was conditioned solely upon his passing a physical examination.  This conditional offer was made prior to any communication with the plant medical department.

On August 25, 2003, plaintiff completed a medical questionnaire.  The following day, he successfully completed a

pre-employment drug test and met with Sandra Fleming, the plant nurse. Fleming asked plaintiff about the scars on his elbows and plaintiff indicated he had had surgery.  Fleming indicated on the pre-placement physical examination summary report that plaintiff, "may not be placed until additional information is returned," Dk. 39, Exh. E, and told plaintiff he would have to see Jay O'Daniel[3] so he could be properly placed without violation of any restrictions.

O'Daniel asked plaintiff to bring in his medical records for placement purposes.  Plaintiff provided some medical records to O'Daniel who two days later told plaintiff that he needed his workers' compensation ratings.  O'Daniel asked plaintiff to complete a medical release so his physicians could send the medical records directly to him.  Although plaintiff did so, plaintiff's doctors would not send the requested medical records to O'Daniel.  Plaintiff then contacted Dr. Moore, Dr. Bruce and Dr. Prostic, who confirmed that they would not send plaintiff's medical records to O'Daniel.

Plaintiff then contacted the workers' compensation archives and asked them to send his medical records to O'Daniel, but they declined

---

[3]The parties do not indicate what Mr. O'Daniel's title or duties are.

to fax the records directly to O'Daniel.  Plaintiff subsequently provided to

O'Daniel a letter from the workers' compensation archives directed to

O'Daniel and the attached records.  O'Daniel indicated that he would

review them and get plaintiff properly placed.

On September 11, 2003, O'Daniel signed a form indicating

claimant had completed the pre-placement physical examination and could

be placed as follows:

> 11/25/98  Dr. Bruce Smith, No repetitive gripping bilaterally, No
> pounding bilaterally; 4/13/99 Dr. Edward J. Prostic, No repeticious[4]
> (sic)  use right arm, especially hand above shoulder, No heaving
> lifting/carrying.

Dk. 39, Exh. G.  O'Daniel told plaintiff that defendant had to look at and

comply with the medical restrictions unless a physician changed them.

Plaintiff admits that physicians Smith and Prostic assigned him

the stated restrictions, but claims he had been released to full duty by the

time he applied for employment with defendant.  No allegation is made that

plaintiff asked either physician to review and update their medical

restrictions, or informed defendant that these restrictions had been lifted, or

provided defendant with a release to full duty from any physician, prior to

this lawsuit.

---

[4]Footnote here in original to "forceful."

O'Daniel provided the pre-placement form to Rodger Brownrigg, defendant's Human Resources Manager for the complex at which plaintiff applied for work.  On September 12, 2003, Brownrigg drafted an e-mail to Rick Nimrick, defendant's Regional Human Resource Manager, detailing the information received from O'Daniel and indicating he did not believe plaintiff could perform the maintenance mechanic position without violating his medical restrictions.  Nimrick concurred with Brownrigg's assessment, advising him to tell plaintiff "the Maintenance position does not fit with or without a reasonable accommodation [but] if he is interested in another position within the plant, we will keep his application active for thirty days and contact him if we have something for him with or without a reasonable accommodation."  Dk.  39, Exh. H.  The record does not reflect that plaintiff requested any accommodation from defendant, or that defendant asked plaintiff about any potential accommodation.

Plaintiff contacted O'Daniel a couple days later and O'Daniel transferred him to Brownrigg, who informed plaintiff he was not hired. Plaintiff alleges that he asked Brownrigg if it was due to his medical records and Brownrigg replied, "Yes, we don't hire handicapped people and we are

not going to start with you. This conversation is over with.  Goodbye." [5]

Plaintiff's EEOC charge alleges solely that he was "denied

employment due to a perceived disability," based upon the following:

> I was perceived as disabled.  I applied for a position of
> employment with the Respondent in August 2003.  On September 22,
> 2003, I was informed by the Human Resources Director that I was
> denied employment due to my medical condition.  Further more, he
> stated, "We don't hire disabled people."

Dk. 39, Exh. K.

Plaintiff is not aware of any employee allowed to commence

work with defendant without completing a pre-employment physical or

without being required to have a doctor submit medical records.  Plaintiff is

not aware of any employee with restrictions similar to his who was

discharged by defendant, or of any employee who was treated differently

than plaintiff was during the application process and pre-employment

physical.

**ADA**

Plaintiff admits he is not disabled, but contends defendant

perceived him as disabled and discriminated against him on that basis.

---

[5]Plaintiff's brief alleges that he "explained that he had no restrictions,"
Dk. 46, p. 16, 23.  Because no record is cited in support of this assertion,
the court has disregarded it, as well as other unsupported assertions.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ⋯ the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

To establish a prima facie case under the ADA in a failure to hire case, a plaintiff must show:

> (1) that [he] is a disabled person within the meaning of the ADA; (2) that [he] is qualified, that is, [he] is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer [failed to hire him] under circumstances which give rise to an inference that the [failure to hire] was based on [his] disability.

See Morgan v. Hilti,108 F.3d 1319, 1323 (10th Cir.1997) (citations omitted); Endlich v. Yellow Corp., 182 Fed.Appx. 825, *828, 2006 WL 1520177, *2 (10th Cir. 2006).  Defendant challenges each of these three elements.

The burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) generally applies to ADA disparate treatment claims.  See Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir.1999).  However, where the plaintiff has direct evidence of discrimination based on disability, the burden-shifting framework may be "unnecessary and inappropriate." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323

12

n. 3 (10th Cir.1997) (citing *White v. York Int'l Corp.*, 45 F.3d 357, 361 n. 6

(10th Cir.1995)).   In direct evidence cases,

> ... an employer will defend its decision on the ground that the plaintiff
> is not otherwise qualified for the position, with or without reasonable
> accommodation.  The *McDonnell Douglas* burden shifting approach
> is unnecessary because the issue of the employer's intent has been
> admitted and the plaintiff has direct evidence of discrimination on the
> basis of his disability.  *If the plaintiff in such a case is in fact
> statutorily disabled*, the determinative issue in the case will not be the
> employer's intent, but whether the employee is "otherwise qualified,"
> with or without reasonable accommodation, to perform the job, a
> factual dispute that is resolved through traditional methods of proof.
> *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1182 (6th
> Cir. 1996) (discussing *White*, 45 F.3d at 361 n. 6).

*Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003)

(emphasis added).

In this case, the facts, read in the light most favorable to

plaintiff, arguably show direct evidence of defendant's intent to discriminate

against plaintiff on the basis of his "disability."  *See Hall v. U.S. Dept. of

Labor, Admin. Review Bd.,* 2007 WL 458009, *6 (10th Cir. 2007) (defining

and explaining direct evidence); Dk. 39, Exh. K. (decision-maker's alleged

explanation  to plaintiff why he was not hired, as "We don't hire disabled

people.")  Accordingly, the court first addresses whether the plaintiff is in

fact statutorily disabled.  *See Davidson*, 337 F.3d at 1189.

**Regarded as disabled**

The ADA broadly defines 'disability' " to include "being regarded as having ⋯ an impairment" that substantially limits one or more of an individual's major life activities."  42 U.S .C. § 12102(2).  Plaintiff's only claim that he meets the statutory definition of disability is that he was erroneously perceived as disabled by the defendant.  As the regulations interpreting the ADA explain, [t]he purpose of the "regarded as" prong is to provide a cause of action to individuals "rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities."  *See Sutton v. United Air Lines, Inc., 527 U.S. 471,* 489 (1999) (quoting 29 CFR pt. 1630, App. § 1630.2( l )).

The court finds it unnecessary to recite at length the legal standards governing this determination, and instead refers the parties to the case of *E.E.O.C. v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006).  The only major life activity asserted in this case is the activity of working.  The claim that an employer regarded a plaintiff as substantially limited in the major life activity of working is a "particularly difficult" claim on which to prevail.  *Heartway Corp.*, 466 F.3d at 1162.   The EEOC regulations state that "[w]ith respect to the major life activity of working," t]he term "substantially limit[ed]" means significantly restricted in the ability

to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.  29 C.F.R. § 1630.2(j)(3)(i) (quotation marks added); *see also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (10th Cir.1994) (applying this regulation); C.F.R. § 1630.2(j)[(3)](ii)(C); *MacDonald v. Delta Air Lines, Inc.*, 94 F.3d 1437, 1444-45 (10th Cir. 1996).

It is thus insufficient for plaintiff to show that defendant treated his medical restrictions as significantly restricting his ability to perform the maintenance job for which he applied.  He must additionally show that defendant treated those restrictions as significantly restricting his ability to perform either (a) "jobs utilizing similar training, knowledge, skills or abilities" within his geographical area or (b) a broad range of "jobs not utilizing similar training, knowledge, skills or abilities" within the geographical area. *See Siemon v. AT & T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997).

To meet this burden, plaintiff relies solely on Mr. Brownrigg's testimony before the Emporia Human Rights Commission, which the court

has found to be inadmissible.  *See* Dk. 46, pp 25-27.  For this reason alone, plaintiff cannot avoid summary judgment on this claim.

Additionally, although the direct evidence shows defendant's belief that plaintiff was unable to perform the maintenance position, other evidence reveals defendant's belief that plaintiff could be considered for other jobs within the plant.  *See* Dk. 39, Exh. H (Nimrick's recommendation to Brownrigg that he tell plaintiff "the Maintenance position does not fit with or without a reasonable accommodation [but] if he is interested in another position within the plant, we will keep his application active for thirty days and contact him if we have something for him with or without a reasonable accommodation.")  Such evidence tends to show that defendant did not regard plaintiff as substantially limited in his ability to work.  *See McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir. 2004); *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000).

Further, the evidence bearing on defendant's perception of plaintiff's impairment indicates that defendant's perception was not based upon speculation, stereotype, or myth, but upon the very information plaintiff gave to defendant  regarding doctors' written restrictions of plaintiff's physical abilities.  The doctor's restrictions give no indication that

16

plaintiff's major life activities were substantially limited, but instead indicated that plaintiff was restricted from doing certain tasks.  No evidence tends to show that defendant had work available which would not have required plaintiff to do the tasks defendant reasonably believed plaintiff could not do without violating his restrictions.

Plaintiff thus fails to present evidence to establish a genuine issue of material fact that defendant regarded him as disabled from either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  *See Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995); *Rebarchek v. Farmers Co-op. Elevator and Mercantile Ass'n.,* 60 F. Supp. 2d 1145 (D. Kan. 1999); *Ouzts v. USAir, Inc.*, 1996 WL 578514 (W.D.Pa.1996); *see also Bernard v. Doskocil Co., Inc.*, 861 F. Supp. 1006, 1013 n. 13 (D. Kan. 1994) (citing legislative history in support of proposition that this prong of the disability definition was not intended to apply where an employer relies on limitations imposed by a doctor).  The court finds it unnecessary to reach the other elements of this claim, including whether plaintiff is "otherwise qualified" for the position.

### Failure to Accommodate/ Disparate Impact

The court similarly finds it unnecessary to reach plaintiff's claim that defendant refused to provide any accommodations for him.  *See generally Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1124 n. 4 (10th Cir. 2004).  The court additionally finds that plaintiff's disparate impact claim[6] is not "like or reasonably related to" plaintiff's allegations in his EEOC charge and is thus barred by plaintiff's failure to exhaust his administrative remedies.  *See Pacheco v. Mineta*, 448 F.3d 783 (5th Cir.2006); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258-59 (7th Cir. 1996); *see generally, Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997).  Alternatively, the court finds that the record fails to present a material question of fact that defendant had a policy or practice of ascertaining whether job applicants had filed workers' compensation claims against previous employers.  Accordingly, summary judgment is warranted on these ADA claims.

### Prohibited Inquiry

The pretrial order includes one claim on which defendant has not moved for summary judgment  -  plaintiff's claim that defendant illegally

---

[6]Plaintiff contends that defendant has a practice of ascertaining whether job applicants have previously filed workers' compensation claims against previous employers, which causes a significant disparate impact upon potential employees who have exercised such rights.

inquired about plaintiff's previous workers' compensation claim because that inquiry was not shown to be job-related and consistent with business necessity.  (Dk. 33, p. 8-9.)  *See generally, Endlich v. Yellow Corp.*, 182 Fed. Appx. 825, 829-830, 2006 WL 1520177,*4 (10th Cir. 2006).  Plaintiff relies upon 42 U.S.C.A. § 12112 (d)(4)(A).

Assuming, arguendo, that defendant did ask about plaintiff's prior workers' compensation claims after making a conditional job offer to plaintiff,[7] plaintiff is not entitled to relief.  The statute upon which plaintiff relies, 42 U.S.C.A. § 12112 (d)(4)(A), gives protection to "employees." No showing has been made that plaintiff was an employee of defendant, or should be considered to be so for purposes of this statute.

Further, even assuming the applicability of the cited statute, plaintiff cannot show that he would have been hired but for such inquiry. *See Hunter v. Habegger Corp.*  1998 WL 104635, *2 (7th Cir. 1998) (finding plaintiff would have to show more than a wrongful inquiry to prevail on anything other than a request for an injunction, would have to demonstrate that but for the wrongful inquiry plaintiff would have been

_____

[7]No claim is made that defendant asked about plaintiff's medical history or workers' compensation claims prior to making a conditional job offer.

19

hired as an employee.)  Had defendant not inquired about plaintiff's

workers' compensation history but asked solely for plaintiff's medical

restrictions, defendant nonetheless would not have hired plaintiff because it

reasonably believed that there were no jobs available that plaintiff could

have performed within the medical restrictions plaintiff provided to

defendant.

**Implied Contract Claim**

Plaintiff asserts an implied contract claim that he was offered

and accepted a  job conditioned solely upon his passing a physical

examination, and that because he passed the physical examination but did

not get the job, defendant breached their implied agreement.  *See* Dk. 33,

p. 6-7, Dk. 46, p. 28.  Defendant asserts that the job offer was conditioned

not only upon plaintiff's passing a physical examination, but also upon

plaintiff's ability to perform the functions of the position without violating his

medical restrictions, which plaintiff could not do.

The court does not believe that the doctrine of implied contract

has any application under Kansas law where, as here, the words used

express that the agreement is conditional.  *See Adair v. Transcontinental*

*Oil Co. ,* 184 Kan. 454, 469-470, 338 P.2d 79,91 (Kan. 1959). "Contract

implied-in-fact is a doctrine applicable to a meeting of the minds, inferred

without explicit words from the conduct of the parties as showing their tacit

understanding; it can have no application where the explicit words actually

used express the thought that agreement is conditional.*" Lewis v. United*

*States*, 1982 WL 36718, 13 (Ct. Cl. 1982), *citing Colonial Metals Co. v. U.*

*S.*, 494 F.2d 1355, 1359 (Ct. Cl. 1974), *overruled on other grounds,*

*Torncello v. U. S.*, 231 Ct. Cl. 20, 681 F.2d 756,(Ct. Cl. Jun 16, 1982).

Even if a legal basis for this claim were recognized, this case

presents no question of fact about any meeting of the minds.  Plaintiff

signed an application clearly stating the defendant had no intention to enter

into any kind of contract with plaintiff.  Although a disclaimer does not

necessarily preclude the formation of an implied contract of employment,

*see, e.g.,  Morriss v. Coleman Co.*, 241 Kan. 501, 738 P.2d 841, 849 (Kan.

1987), a disclaimer signed by a plaintiff can be dispositive of the

employer's intent.  *Buckley v. Keebler Co.*, 1998 WL 314566, *3 (10th Cir.

1998).  Summary judgment is proper on a claim of implied contract where

the plaintiff presents only evidence of his own unilateral expectations of

employment.  *Buckley*,153 F.3d 726, 1998 WL 314566, *2 (10th Cir. 1998).

There is no "meeting of the minds" created by unilateral expectations of an

21

employee.  *Conyers v. Safelite Glass Corp.*, 825 F. Supp. 974 (D. Kan. 1993). Plaintiff thus fails to raise a material question of fact on this issue.

## Kansas Public Policy - Retaliatory Failure to Hire

Plaintiff additionally claims that defendant's refusal to hire him was in retaliation for plaintiff's having filed a worker's compensation claim against a previous employer.   Both parties agree that recognition of this cause of action would require an extension of Kansas law.  Assuming, *arguendo*, that Kansas courts would recognize this cause of action, plaintiff would have to show, among other elements, that there is a causal connection between defendant's decision not to hire plaintiff and plaintiff's prior worker's compensation filings.  *See Garcia v. IBP, Inc.*, 1994 WL 590905, *4 (D. Kan.1994); *Ortega v. IBP, Inc.*, No. 92-2351, 1994 WL 373887, *6 (D. Kan. July 1, 1994); *Rebarchek v. Farmers Co-op Elevator*, 35 P.3d 892, 899 (Kan. 2001); *Pilcher v. Board of Co. Commissioners*, 14 Kan. App. 2d 206, 213, 787 P.2d 1204 (1990).

The court does not decide whether this claim is cognizable in Kansas because even if such a claim were actionable, plaintiff has not presented substantial evidence tending to prove his protected activity was a determining factor in defendant's decision not to hire him.

In support of the causal element of this tort claim of retaliatory failure to hire, plaintiff contends that he has direct evidence of "discrimination on the basis of his disability." Dk. 46, p. 14. Although plaintiff fails to specify the evidence he alludes to, the court believes it can only be Brownrigg's alleged statements that plaintiff was not hired because of his medical restrictions and that "we don't hire disabled/handicapped people."

Plaintiff rests its case upon the fact that the court must view this evidence in the light most favorable to plaintiff, and must assume that this statement was made. But plaintiff does not show how these references to "medical restrictions" or "handicapped people" relate to the filing of a prior worker's compensation claim. One can have medical restrictions and be disabled without ever having engaged in the protected activity of filing a worker's compensation claim. In light of the other evidence of record, this statement fails to raise a reasonable inference that defendant was referring to plaintiff's worker's compensation claim. Plaintiff thus fails to show a material question of fact that defendant refused to hire him because of his prior worker's compensation filings.

IT IS THEREFORE ORDERED that defendant's motion for

summary judgment (Dk. 38) is granted.

Dated this 20th day of March, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge